349 So.2d 900 (1977)
Ronnie E. McADAMS, Individually, etc.
v.
Dr. Alfred M. HOLDEN et al.
No. 11377.
Court of Appeal of Louisiana, First Circuit.
June 13, 1977.
Rehearing Denied August 24, 1977.
Writ Refused November 4, 1977.
*901 Arthur Cobb, Baton Rouge, of counsel for plaintiff-appellant, Ronnie E. McAdams.
Robert L. Kleinpeter, Baton Rouge, of counsel for defendant-appellee, St. Paul Fire and Marine Ins. Co. and Dr. Alan J. Ostrowe.
Roger M. Fritchie, Baton Rouge, of counsel for defendant-appellee, Our Lady of the Lake Hospital and Ins. Co. of North America.
Before ELLIS, CHIASSON and PONDER, JJ.
CHIASSON, Judge.
This action was initiated by Ronnie E. McAdams, individually and on behalf of his minor son, James Richard (Ricky) McAdams, and Linda McAdams, plaintiffs-appellants, to recover damages for injuries sustained by Ricky McAdams as the result of an operation on June 28, 1973, at Our Lady of the Lake Hospital, Baton Rouge, Louisiana. Named as defendants in this action were Dr. Alfred M. Holden, Dr. Jack D. Clayton, The Baton Rouge Clinic and Dufrocq Corporation, St. Paul Fire and Marine Insurance Company, Dr. Alan J. Ostrowe, Our Lady of the Lake Hospital, and Insurance Company of North America.
Prior to the trial on the merits suit was dismissed as to Dr. Holden, Dr. Clayton, The Baton Rouge Clinic and Dufrocq Corporation. Following a trial on the merits the jury, after due deliberation, returned a verdict in favor of the remaining defendants, dismissing plaintiffs' suit.
The plaintiffs have appealed this decision insofar as it dismisses their suit against Dr. Alan J. Ostrowe and his insurer, St. Paul Fire and Marine Insurance Company.
The appellants contend that the jury erred:
1) In failing to find that medical malpractice on the part of Dr. Ostrowe was the cause of Rickey's injuries;
2) In allowing sympathy for Dr. Ostrowe to enter into their deliberations and affect their decision; and
3) In not properly applying the doctrine of res ipsa loquitur.

On June 28, 1973, Ricky McAdams underwent surgery at Our Lady of the Lake Hospital to correct a kidney disorder. The surgery was performed by Drs. Holden and Clayton. Dr. Ostrowe administered the anesthesia. Ricky was approximately five years old at the time and a normal healthy child. About forty-five minutes into the operation Ricky suffered a cardiac arrest. Resuscitation procedures were begun and a *902 heart beat was restored within a minute of the report of cardiac arrest.
As a result of this cardiac arrest Ricky suffered a severe neurological deficit which rendered him practically helpless.
It is the appellants' contention that Ricky suffered this neurological deficit because Dr. Ostrowe failed to constantly monitor Ricky's vital systems and that, as a result, Ricky's brain was deprived of oxygen for approximately three to five minutes.
The standard of care to which a physician, surgeon or dentist is held is that "degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case." Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1953).
The standard of care applicable to anesthesiologists practicing in the Baton Rouge area includes a constant monitoring of the patient's vital signs by the anesthesiologist or a qualified nurse anesthetist. Dr. Ostrowe testified that he left the operating room for about five minutes to answer a telephone call. While Dr. Ostrowe was gone he was relieved by Ann Ashbaugh, a qualified nurse anesthetist. Both Dr. Ostrowe and Nurse Ashbaugh testified that Ricky's vital signs were constantly monitored.
Dr. Ostrowe testified that he asked Catherine Baughman, the circulating nurse to get Nurse Ashbaugh to relieve him. Nurse Baughman testified that she did not remember being asked to get Nurse Ashbaugh. Except for Dr. Ostrowe and Nurse Ashbaugh, no one else remembers either Dr. Ostrowe being relieved by Nurse Ashbough or Dr. Ostrowe ever leaving. There is no evidence that Ricky was ever left unattended or that his vital signs were not constantly monitored. The appellant has not shown that Dr. Ostrowe failed to exercise the degree of care required of an anesthesiologist in the Baton Rouge area.
After the rendition of judgment and within the delays allowed, the appellants filed a motion for a new trial. The appellants allege that the jury improperly allowed its sympathy for Dr. Ostrowe to influence its decision. This allegation was supported by the affidavit of a jury member.
Following a contradictory hearing the District Court properly denied the appellant's motion for a new trial because a juror cannot be heard to impeach the jury's verdict. Dieudonne v. Guidry, La.App., 336 So.2d 990 (3rd Cir. 1976).
The doctrine of res ipsa loquitur is properly applied when the accident is the kind that does not normally occur in the absence of negligence; the injury was caused by an agency or instrumentality within the control of the defendant; and evidence as to the cause of the accident is more readily available to the defendant. Comment, 25 La.Law Review 748, 750. The jury did not fail to properly apply the doctrine of res ipsa loquitur in this case because the accident which occurred, cardiac arrest with a resultant neurological deficit, is one which can occur in the absence of negligence. The testimony of the experts was that a statistically significant number of cardiac arrests occur on the operating table for unknown reasons unrelated to the negligence of any party. The testimony also established that while there is generally a three to five minute period in which successful resuscitation may be made without a detectable neurological deficit this is not a hard and fast rule and a neurological deficit may occur even where there is immediate resuscitation.
Even if it was admitted, for the sake of argument, that res ipsa loquitur applied in this case, there is evidence in the record which would support a finding by the jury that Dr. Ostrowe had proved that he was not negligent. Res ipsa loquitur is a rule of evidence whose applicability is normally determined at the conclusion of the trial. It is applied when the plaintiff has shown circumstances which create an inference of *903 negligence on the part of the defendant. The defendant must then come forward with proof to offset this inference. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972). Dr. Ostrowe and Nurse Ashbaugh testified that Ricky was never left unattended and that the vital signs were constantly monitored. The jury could well believe that this testimony overcame whatever inference of neglect created by the application of the doctrine of res ipsa loquitur.
For the above reasons, the judgment appealed from is affirmed. Costs to be paid by the appellants.
AFFIRMED.