DOMENGEAUX, Judge.
Plaintiff sued defendants, claiming damages for unlawful restraint, false imprisonment, and personal injuries. A jury found in favor of defendants and plaintiff’s suit *1362 was dismissed. Plaintiff has appealed and argues that the trial court erred by (1) giving “reasonable man” and “proximate cause” instructions to the jury; (2) failing to give certain other instructions proposed by plaintiff which related to unlawful restraint and false imprisonment; and (3) denying plaintiff’s motion for directed verdict with respect to the issue of liability.
We find that the testimony of the various witnesses, although sometimes conflicting or contradictory, establishes the following facts:
During the late evening hours of Saturday, December 9, 1978, plaintiff Michael Don Keys and his friend, John Wells, entered a Sambo’s Restaurant in Alexandria, Louisiana. They sat on adjacent stools at the counter and each ordered a chicken dinner, french fries and coffee. Before their food was served, Wells became ill and left the counter area.[1] Although plaintiff did not know it, Wells left the restaurant, went to his car in the parking lot, and fell asleep.
Terry Ramone Smith, the assistant manager at the restaurant and one of the defendants (hereafter referred to as “defendant”),[2] was notified of the departure of Wells by one of his waitresses. He proceeded to the counter area where he questioned plaintiff as to the whereabouts of his buddy.[3] Where Wells was Keys did not know, but he assured defendant that he, plaintiff, would pay for Wells’ meal if Wells did not return. With that assurance, defendant returned to the cook stand where he was preparing meals.
When the chicken dinners arrived, plaintiff ate all of his meal and some of Wells’ meal, because Wells had not returned. Plaintiff then took a piece of chicken from Wells’ plate, put it in his (plaintiff’s) pocket, and walked away from the counter without paying for either meal. It is unclear whether plaintiff first went to the bathroom after leaving the counter, but it is clear that he attempted to leave the restaurant without paying for either meal and without explaining to the waitress who requested payment, or any other employee, why he intended to leave without paying.
Informed by a waitress of plaintiff’s departure from the restaurant, defendant hurriedly proceeded to the exit through which plaintiff was leaving, and requested that he return to pay for the two meals which had been recorded on one ticket. Plaintiff, who had completed his exit through the first of two sets of double doors, did return and offered to pay $5.00. This amount, though sufficient to pay for the meal plaintiff first ordered, was insufficient to cover the cost of both meals,[4] so defendant refused payment knowing that he would be liable to his employer for the balance if he allowed plaintiff to pay the $5.00 and leave.
After defendant refused the $5.00 offer, plaintiff again attempted to leave the restaurant without further explanation. Defendant prevented this escape by holding the doors shut. He told plaintiff that he would have to remain in the restaurant until the police (who had been called by defendant or another employee) arrived to resolve the situation.
Apparently infuriated by his inability to leave, plaintiff began cursing defendant and the waitresses who were nearby, and began swinging his arms, striking defendant in the chest. Fearful that plaintiff’s increased belligerence would endanger the safety of other restaurant patrons, defendant, a big man at 6'1", 295 lbs., escorted the plaintiff to the restroom area, put him in *1363 the restroom, and leaned against the door from outside the restroom. This action prevented plaintiffs escape from the restroom and assured that no harm would result to others on plaintiff’s account.
When two policemen arrived minutes later, they found plaintiff in the restroom in a seated position. When told by the policemen to stand, he began cursing the officers in language most foul. One officer struck plaintiff in the face when it appeared that plaintiff was about to strike one of them. Thus subdued, plaintiff was helped to his feet by the officers when it became evident that he could not walk on his own. With one of plaintiff’s arms around the shoulders of each officer, the three walked to the police car and drove to the police station. There plaintiff was charged with disturbing the peace, failure to pay for a meal, and resisting arrest.
Shortly after his incarceration, and in the wee hours of Sunday morning, December 10th, plaintiff was bailed out by his father. Later, he was .taken to Huey P. Long Memorial Hospital where it was determined that plaintiff had suffered a broken ankle. Thereafter plaintiff brought this suit.
Plaintiff argues that the trial court erred in giving certain jury instructions. The disputed portions of the lengthy jury instructions given by the trial court appear as follows, with emphasis added to those portions complained of particularly:

In a civil action such as this that you have heard, the burden is upon the Plaintiff to prove his case by a preponderance of the evidence. To establish a preponderance of evidence the Plaintiff must prove that each essential fact is more probably true than not. The law of Louisiana provides that every act, whatever, of a man which causes damage to another obliges him by whose fault it happened to repair it. Now that’s very important in considering this case. Liability is therefore founded upon fault or conduct and whether or not fault exists depends upon the facts and circumstances presented in each particular case. In the determination of fault, as respecting iiability for damages, a common sense test is to be applied. That is, how would a reasonably prudent man or woman have acted or what precautions would he or she have taken if faced with similar conditions and circumstances. The degree of care to be exercised must always be commensurate with the foreseeable danger or consequences confronting the alleged wrongdoer. A lack of this care is also called negligence or fault, which is defined as follows: Negligence or fault is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do; when prompted by considerations which ordinarily regulate the conduct of human affairs.
The proximate cause of an accident or an incident is that which, in a natural and continuous sequence, unbroken by any intervening or outside cause, produces the injury and without which the results would not have occurred. It is the direct cause of an accident or an incident. Fault or negligence is a proximate cause of an incident when, under the circumstances, the incident may have been reasonably foreseen by a person of ordinary intelligence. To be deemed a legal cause, the act must be a substantial factor without which the incident would not have occurred.
For the Defendants to be held liable in this case, you must believe from a preponderance of the evidence that the fault of the Defendant, if any, was a substantial cause of the incident and resulting injury. The mere fact that an incident has happened or occurred is not proof of negligence or fault. Fault is a question of fact and it is fundamental in the law that those who allege negligence or fault must prove it. Therefore, the question of whether Defendant was at fault is a question of fact which you must decide in light of all of the evidence, keeping in mind the legal principles which I shall explain to you and which may or may not be applicable, depending upon your determination of the facts.
*1364 Now in this particular case, I instruct that a proprietor or employee of an establishment-in this ease a restaurant-is entitled to make an effort to collect a bill or a meal ticket by employing reasonable means under the circumstances. A proprietor or an employee of an establishment-a restaurant in this case-is entitled to take reasonable steps to protect other patrons and to help maintain peace and order on the premises. If you, the jury, feel that the conduct of Terry Smith and/or any employee of Sambo’s Restaurant toward the Plaintiff Mr. Keys was reasonable under all of the circumstances then you should find in favor of the Defendants Terry Smith and Sambo’s Restaurant Incorporated. If, on the other hand, you feel that the conduct of Terry Smith and/or any employee of Sambo’s Restaurant toward the Plaintiff Mr. Keys exceeded the bounds of reasonable care and consideration under all of the circumstances then you should find in favor of the Plaintiff Mr. Keys.”
Plaintiff urges that these instructions were erroneously given because principles of reasonableness and proximate cause do not apply in a false imprisonment/unlawful restraint case. Instead, plaintiff argues, the trial court should have instructed the jury as follows:
“The offense that plaintiff, MICHAEL KEYS, was detained by defendant, SMITH at SAMBO’S was beating a board bill. That offense is defined as a felony by R.S. 21:21.
The law of Louisiana permits a private citizen to make a felony arrest only when it has been committed. Code of Criminal Procedure, Article 214.
A private citizen may make a felony arrest, but he must show that the person arrested has committed a felony. Code of Criminal Procedure Article 214; Dun-son v. Baker, 80 So. 238 (La.S.Ct., 1918) and cases cited therein; Banks v. Food Town, 98 So.2d 719 (La.App.1957).
A false arrest (an arrest without legal authority), is one means of committing a false imprisonment. Banks v. Food Town supra; 35 CJS “False Imprisonment" Section 2.
Any party who commits, procures or instigates a false arrest and imprisonment is responsible in damages for all injuries and harms caused thereby. Fon-tenot v. Lavergne, 365 So.2d 1168 (La. App.1978).
It is not a defense to a false detention that the person causing the detention acted without malice or ill will. Fontenot v.

Lavergne supra.

An employer or employee who commits, procures or instigates a false arrest or detention is responsible for the damage caused thereby if the employer was acting in furtherance of his employer’s business or preserving and protecting the employer’s property. Blickhan v. American Brewing Co., 171 So. 865 (La.App.1937), and 35 CJS “False Imprisonment", Section 40(4).”
Plaintiff’s argument has some merit. The instructions administered by the trial court, although not necessarily incorrect, are by no means complete because they fail to instruct the jury that defendant may have committed an unlawful arrest or that plaintiff’s injuries may have been caused by a reasonable attempt to resist an unlawful arrest,[5] in which case the defendants may have to respond in damages. The jury could not have applied the unlawful arrest principles to the facts because those principles were not part of the court’s charge to the jury. Failure to instruct the jury on these essential legal principles constituted error. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
We note that the jury made no findings of fact, other than that the defendant acted reasonably under all the circumstances. In the absence of the jury’s findings, and because their verdict was reached by applying incorrect or, at best, incomplete principles of law, we are authorized to make our own findings of fact from the *1365 record before us, instead of remanding the case for a new trial. Gonzales v. Xerox Corporation, supra; Bond v. Jack, 387 So.2d 613 (La.App. 3rd Cir. 1980); Louisiana Constitution of 1974, Article 5, Section 10; La. C.C.P. Article 2164. This is true even though we do not have the advantage of viewing the witnesses firsthand. Gonzales v. Xerox Corporation, supra.
Our findings of fact have already been set out, beginning with the second paragraph of this opinion. These findings were made only after a meticulous review of the testimony given by the plaintiff, the defendant, Wells, two eye-witness waitresses, and the two police officers. Based on the facts as above stated, we find that defendant’s detention of plaintiff was legal and that plaintiff’s efforts to resist this lawful arrest resulted in his own injuries, which were not caused by the fault of either of defendants.
A private citizen is legally permitted to detain or arrest someone in only two instances. C.Cr.P. Article 215 (commonly referred to as the shoplifting statute) permits “a .. . merchant, or a specifically authorized employee of a merchant” to use reasonable force to detain a person when there is reasonable cause to believe the person has committed a theft of goods held for sale by the merchant. Article 215 specifically declares that this detention does not constitute an arrest. C.Cr.P. Article 214 (the citizen’s arrest statute), the second instance, authorizes a private citizen to make a legal arrest. Since we decide that the arrest of Michael Don Keys was a valid citizen’s arrest under Article 214, we do not reach the issue of whether Article 215 might also have applied.
C.Cr.P. Article 214: Citizen’s Arrest C.Cr.P. Article 214 reads in its entirety:
“A private person may make an arrest when the person arrested has committed a felony, whether in or out of his presence.”
The Louisiana Supreme Court has held that a private citizen must show that the person he arrested has committed a felony before his actions will be excused as proper. Dunson v. Baker, 144 La. 167, 80 So. 238 (1918); State v. Jones, 263 La. 164, 267 So.2d 559 (1972). While proof of the arrested person’s conviction of the felony would facilitate the arresting party’s burden of proving the commission of the felony, proof of conviction does not seem to be a requirement. Were it otherwise, the defendant-arrester in a false arrest suit would be at the mercy of a prosecutor who might elect not to try the arrested party because a plea bargain had been struck, or because he thought his case was too weak, or because of some other reason. In such situations, the defendant-arrester should not be denied the opportunity to prove the arrest was legal because a felony had been committed. Thus, we conclude that commission of the felony may be proved during the civil trial as a defense to charges of false imprisonment or arrest.
As plaintiff pointed out in his suggested instructions, the only applicable felony is found in La.R.S. 21:21 and provides in part as follows:
“No person shall:
(1) Obtain accommodations at any hotel, inn, boarding house or restaurant or procure food without paying therefor, with intent to defraud, except when credit is given by express agreement.
sfc % sf: * sj«
(6) Obtain accommodations, food, property or services by other than the use of a credit card from any hotel, inn, boarding house or restaurant by the use of deception knowing he is without sufficient means to pay for them.
Whoever violates any provision of this Section shall be fined not more than five hundred dollars, or imprisoned, with or without hard labor, for not more than two years, or both.” (Emphasis added).
La.R.S. 14:2(4) defines “felony” as “any crime for which an offender may be sentenced to death or imprisonment at hard labor.” (Emphasis added). Thus, one whom the evidence shows has committed the crime defined in R.S. 21:21 has committed a felony since the statute provides that the offender may be sentenced to imprison *1366 ment at hard labor. Since the record indicates that plaintiff had not been criminally tried on the failure to pay for a meal charge, and, hence, had been adjudged neither guilty nor innocent of that charge at the time of this trial, we must decide whether the facts show that the crime had actually been committed. If the facts so show, the arrest was legal.
As the facts demonstrate, plaintiff initially ordered one meal, later agreed to pay for two meals, ate two meals, and then proceeded to walk out of the restaurant without explanation and without paying for either meal.
Plaintiff’s departure from the restaurant with no explanation for his non-payment constituted prima facie evidence of intent to defraud under La.R.S. 21:22,[6] and thus satisfied the elemental requirements for proof of the crime of fraudulently procuring food from a restaurant without paying the amount due. Plaintiff, of course, could have rebutted the prima facie evidence of intent to defraud which was established by his unexplained departure.
The best opportunity for plaintiff to rebut the prima facie evidence occurred when he returned to the restaurant at defendant’s behest. However, plaintiff did not then explain to defendant the reason for his departure. He merely produced $5.00, offered to pay that amount only, and flatly refused to pay for the second meal. When this offer was refused, plaintiff again attempted to leave without further explanation. Never did plaintiff simply protest the amount alleged to be due, and he never offered to explain his behavior to defendants prior to his arrest by the police.
Plaintiff testified at trial that he was merely seeking the whereabouts of his friend, John Wells, when he left the restaurant. Wells, he said, had agreed to pay for both meals beforehand. Wells’ testimony corroborated plaintiff’s explanation. Sam-bo’s, however, did not know of this plan (if, in fact, it did exist), and plaintiff never apprised Sambo’s or Terry Smith of his arrangement with Wells. Plaintiff also claimed at trial that he did not have sufficient funds to pay for both meals. However, this would further demonstrate a knowing intent on his part to defraud the restaurant since he agreed to pay for both meals, even though he must have known at that time that he could pay for no more than one.
We are persuaded by the evidence that plaintiff committed the felony proscribed by La.R.S. 21:21. We are unmoved by his hindsighted efforts to explain his unusual behavior of leaving the restaurant without first paying for the meals he ordered.
Even if it could be said that plaintiff did not actually leave the premises within the meaning of R.S. 21:22, so that the presumption of intent to defraud was never created, we would have no difficulty in deciding that plaintiff had committed the crime of an attempt to fraudulently procure food from a restaurant without paying therefor. Attempt is defined at La.R.S. 14:27:
“A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
D. Whoever attempts to commit any crime shall be punished as follows:
*1367 (1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not more than fifty years;
(2) If the offense so attempted is theft or receiving stolen things, and is not punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned for not more than six months, or both. If the offense so attempted is theft or receiving stolen things, and is punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned not more than one year, or both;
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.” (Emphasis added).
Under 14:27 D(3) an attempt to fraudulently procure food from a restaurant would be a felony just like the parent offense because the offender would be fined or imprisoned “in the same manner as for the offense attempted” except that the fine or imprisonment would not exceed one-half of the maximum fine or imprisonment prescribed for the offense attempted. State v. Patterson, 259 La. 508, 250 So.2d 721 (1971). Since R.S. 21:21 provides that the offender may be imprisoned at hard labor, one guilty of an attempt may be imprisoned in the same manner-at hard labor. Here, plaintiff would be guilty of an attempt to fraudulently procure food from a restaurant if we assume, arguendo, that his departure had not been fully completed because, by his words and actions before and after the initial restraint, he demonstrated a specific intent to commit the offense and he would have been guilty of a crime if his intentions had been fully consummated.
We also find that plaintiff’s personal injuries were the result of his doomed attempt to resist a lawful arrest. Defendant used only that force which was necessary to secure plaintiff’s presence on the premises while at the same time assuring that neither he, his customers, nor his employer’s property, were harmed. Plaintiff’s injuries were the products of his own misbehavior, for which the defendants cannot be held accountable.
For the above and foregoing reasons, the judgment in favor of defendants, Terry Ra-mone Smith and Sambo’s Restaurant, Inc., dismissing plaintiff’s suit is affirmed. All costs are assessed against plaintiff.

AFFIRMED.

. The pair had been drinking alcoholic beverages for much of the evening while celebrating Wells’ birthday. According to his testimony, Wells’ illness was the product of his drinking and the smell of Sambo’s food.

. The other defendant is Sambo’s Restaurant, Inc., on whose behalf Terry Smith was acting. For convenience sake, though, “defendant” shall refer only to Terry Smith unless indicated otherwise.

. Defendant explained that if Wells did not intend to return to pay for his meal, then he had the right to throw Wells’ order away.

. The total cost of the two meals was never established but there is no dispute that the amount exceeded $5.00.

. We do not mean to imply that all, or even any, of plaintiff’s proposed instructions should have been given. We do think, considering the facts, that some instructions on the principles of unlawful arrest should have been given.

. La.R.S. 21:22 provides:
“The failure of any person to pay the proper charges due for any food, lodging, beverages, or anything of value due to any hotel, inn, boarding house or restaurant before departing from the premises, without first personally appearing before the room clerk or other agent of the establishment before departing and protesting the amount alleged to be due, or without working out satisfactory credit arrangements for the payment thereof, is prima facie evidence of intent to defraud, within the meaning of R.S. 21:21; .”